UNITED STATES <em>v.</em> BOUTWELL.

In the absence of statutory provision to the contrary, a mandamus against an officer of the government abates on his death or retirement from office. His successor in office cannot be brought in by way of amendment of the proceeding or on an order for the substitution of parties.

ON MOTION. *Mr. R. W. Corwine,* in behalf of the owners of an order on the Treasury of the United States, had applied

to the Supreme Court of the District of Columbia for a man-
damus on the Hon. G. S. Boutwell, then Secretary of the
Treasury, to pay it.   That court refused the mandamus, and
the case was brought, on error, by the relators here.   After
it had got into this court, Mr. Boutwell resigned his place
of Secretary and the Hon. W. A. Richardson was appointed
to it.   Hereupon Mr. Corwine moved for leave to bring in
and substitute Mr. Richardson on the record as defendant in
the place of Mr. Boutwell.   It did not appear that any ap-
plication had been made to Mr. Richardson as Secretary to
pay the draft.   Mr. Richardson, by his counsel, opposed the
motion.

*Messrs. R. M. and Q. Corwine, in support of the motion:*

We assume, for the purpose of our argument, that the claim
of the relators is a just one, and that the order on the treasury
held by them ought to be paid.   That in such a case they
ought to certainly have the assistance of the courts cannot
be denied.   But how, practically, can they certainly have it
if they cannot have the substitution asked for?  and if, on
the contrary, the right to any writ has abated by the resig-
nation of Mr. Boutwell?   Rarely does any officer of the
Cabinet long remain in office.   In that department which
specially concerns this court, for example, since 1864—that
is to say, in nine years—seven attorneys-general have been
in and out of these precincts.   If a claimant on the treasury
must proceed *de novo* against each successive secretary he
will rarely see the end of his suit, for a secretary rarely re-
mains in office for as long a time as in the "law's delay" a
suit is pending.   Such a doctrine, therefore, as is contended
for on the other side is a practical denial of justice.

But why should such a doctrine prevail?   We seek relief
not against Mr. Boutwell, but against the Secretary of the
Treasury of the United States.   Until he comes into place,
Mr. Boutwell is as nothing to us, and he is as nothing to us
from the moment that he leaves place.   The person is noth-
ing; the place or office everything.   The obligation on which
we rely arises from the acceptance of an *office*, which has im-

posed a duty on its incumbent. Why; then, when one sec-
retary departs shall not the new one be substituted for him?
*The Sapphire,** in this court, seems in point. There a libel
had been filed by the then Emperor of the French, Napoleon
III, against the Sapphire, an American vessel, for injuries
done to the French ship Euryale. Before the cause came to
be heard Napoleon III was deposed. And one question was
whether the suit had not abated. The counsel for the re-
spondents argued that the Euryale was a vessel of the French
government, with which Napoleon had "nothing whatever
now to do, being banished and a fugitive." But this court
said:

" The reigning emperor, or national assembly, or other actual
person or party in power, is but the agent and representative
of the national sovereignty. A change in such representative
works no change in the national sovereignty or its rights. The
next successor recognized by our government is competent to
carry on a suit already commenced, and receive the fruits of it.

" If a substitution of names is necessary or proper, it is a
formal matter, and can be made by the court under its general
power to preserve due symmetry in its forms of proceeding."

Mandamus is in the nature of a suit at common law.
After institution, its conduct and management are governed
by the pleadings and practice which pertain to like suits,
whether in the Circuit or in the Supreme Court, on writ of
error. All such amendments as can be made in suits at law
may be made in suits of mandamus. The strict rules apper-
taining to the old writ of right, as this writ was once called,
have no longer any application in this country. New par-
ties, plaintiff or defendant, may be made upon a proper case.
The death of either party does not necessarily abate the suit.
Upon a proper case, orders for the substitution of parties
will be made *as a matter of course.*†

If this were a proceeding against Mr. Boutwell individu-

---

* 11 Wallace, 168.

† Maddox *v.* Graham, 2 Metcalfe, 56 ; Hollister & Smith *v.* The Judges,
&c., 8 Ohio State, 201.

ally, and he were dead, there could be no question of our right to bring in his representatives under this rule.

*Mr. C. H. Hill, contra.*

Mr. Justice STRONG delivered the opinion of the court.

The office of a writ of mandamus is to compel the performance of a duty resting upon the person to whom the writ is sent. That duty may have originated in one way or in another. It may, as is alleged in the present case, have arisen from the acceptance of an office which has imposed the duty upon its incumbent. But no matter out of what facts or relations the duty has grown, what the law regards and what it seeks to enforce by a writ of mandamus, is the personal obligation of the individual to whom it addresses the writ. If he be an officer, and the duty be an official one, still the writ is aimed exclusively against him as a person, and he only can be punished for disobedience. The writ does not reach the office. It cannot be directed to it. It is, therefore, in substance a personal action, and it rests upon the averred and assumed fact that the defendant has neglected or refused to perform a personal duty, to the performance of which by him the relator has a clear right. Hence it is an imperative rule that previous to making application for a writ to command the performance of any particular act, an express and distinct demand or request to perform it must have been made by the relator or prosecutor upon the defendant, and it must appear that he refused to comply with such demand, either in direct terms or by conduct from which a refusal can be conclusively inferred.* Thus it is the personal default of the defendant that warrants impetration of the writ, and if a peremptory mandamus be awarded, the costs must fall upon the defendant.

It necessarily follows from this, that on the death or retirement from office of the original defendant, the writ must abate in the absence of any statutory provision to the con-

---

* Tapping on Mandamus, 283.

trary. When the personal duty exists only so long as the office is held, the court cannot compel the defendant to perform it after his power to perform has ceased. And if a successor in office may be substituted, he may be mulcted in costs for the fault of his predecessor, without any delinquency of his own. Besides, were a demand made upon him, he might discharge the duty and render the interposition of the court unnecessary. At all events, he is not in privity with his predecessor, much less is he his predecessor's personal representative. As might be expected, therefore, we find no case in which such a substitution as is asked for now has ever been allowed in the absence of some statute authorizing it. On the contrary, after the statute of 9th Anne, chapter 20, sec. 1, it was the acknowledged doctrine in England, that the rules and practice as to abatement by death, resignation, or removal from office, were the same in cases of mandamus as in personal actions. By that statute, it was enacted that the prosecutor or relator may plead to or traverse all or any of the material facts averred in the return, the defendant having liberty to reply, take issue, or demur, and it was directed that such further proceedings might be had as might have been had if the prosecutor had brought his action on the case for a false return. Thus mandamus became in effect a personal action against the defendant.* This statute was in force in Maryland when the District of Columbia was a part of that State, and hence it is in force in the District now. Therefore, whatever may be the rule elsewhere, *here* a writ of mandamus must abate whenever the performance by the defendant of the personal duty it seeks to enforce has become impossible.

The law was changed to some extent in England, by the later act of Parliament of 1 William IV, chapter 21, sec. 5, by which it was enacted that in case the return to any writ (of mandamus) within the purview of the act should, in pursuance of an allowance made by it, be expressed to be made on behalf of any other person than the defendant, the further proceedings on such writ should not abate or be discon-

---

* See Chitty's General Practice, 3d ed., 1406–1409.

tinued by death, resignation, or removal from office of the person who made such return, but the same might be continued and carried on in the name of such person, and if a peremptory writ should be awarded, it might be directed to any successor of such person in office or right. No similar statute exists with us, and its enactment in England was a recognition of the rule that the death, resignation, or removal from office of the defendant, worked an abatement of the action. It required a statute to change the rule, and to avoid injustice, the costs of the writ, when issued and obeyed, were committed to the discretion of the court.

And, even if the retirement of the defendant from office and his consequent inability to perform the act demanded to be done does not abate the writ, or necessitate its discontinuance, there is still an insuperable difficulty in the way of our directing the substitution asked for. We can exercise only appellate power. We have no original jurisdiction in the case.* But any summons issued, or rule upon Mr. Richardson requiring him to become a party to the suit, would be the exercise of original jurisdiction over both a new party and a new cause, for the duty which he would be required to perform would be his own, not that of his predecessor.

MOTION DENIED.

---

NOTE.

The preceding case, in its principal form, being subsequently reached in the regular call of the docket, the court decided that the suit having abated must be dismissed; Mr. Justice CLIFFORD, who announced this judgment, referring to the opinion just above given, as showing the abatement of the suit by the resignation of Mr. Boutwell and by the appointment of his successor, and referring to that opinion and to the case of *The Secretary* v. *McGarrahan*,† as all that was necessary to support the conclusion to which the court had come in thus finally disposing of the case.

---

* Marbury *v.* Madison, 1 Cranch, 137; Kendall *v.* United States, 12 Peters, 526.

† 9 Wallace, 313.